IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| | ) ) | Civil Action No. 2:11-cv-02153-JLH |
| v. | ) ) | |
| OLD DOMINION FREIGHT LINE, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Equal Opportunity Commission (Commission) respectfully submits this Memorandum Brief in Support of its Response in Opposition to Defendant's Motion for Summary Judgment. Because the evidence shows the Commission's Motion for Summary Judgment on Liability should be granted, Defendant's Motion should be denied.[1] In the alternative, if the Court does not grant the Commission's motion, there are sufficient g3enuine issues of material fact to preclude granting Defendant's motion.

**FACTUAL INTRODUCTION**

Defendant hired Grams as a local driver out of its Fort Smith, Arkansas terminal on November 29, 2004, and Defendant terminated Grams' employment on July 24, 2009.[2] (Ex 1, Grams' hire document; Ex 2, Grams' termination document). Grams worked for Defendant for five years without any major accidents/incidents. (Ex 3, Grams' incident reports).

---

[1] All exhibits are attached to this Memorandum, including those referenced in Plaintiff's Response to Defendant's Material Facts.
[2] The Commission is no longer seeking relief for Michael Brady as outlined in Paragraphs 13-17 of its Amended Complaint.

On Monday, June 29, 2009, Grams called Tilden Thornton, his supervisor, and told Thornton he might be an alcoholic, he needed help, and he would not report to work that day because he needed to get immediate help and was going to Alcoholics Anonymous (AA). (Ex 4, Grams' deposition at pp. 45-46; Ex 5, Thornton's deposition at p. 16). The matter was eventually brought to the attention of Brian Stoddard, vice president of safety and personnel. (Ex 6, Rhodes' deposition at pp. 66-67). Stoddard instructed Rhodes, terminal manager, to immediately suspend Grams from driving. Stoddard also directed Grams to immediately report to a DOT certified Substance Abuse Professional (SAP). (Ex 7, Stoddard's email dated June 29, 2009).

Grams reported to the terminal in the afternoon of June 29, 2009, and during this meeting, Rhodes outlined the steps necessary for Grams to complete before he could return to work. (Ex 4, Grams' deposition at p. 79; Ex 6, Rhodes' deposition at pp. 70-71). Rhodes did not inform Grams that he would never return to a driving position. (Ex 6, Rhodes' deposition at p. 70).

Grams met with the SAP Jackson on July 1, 2009, for approximately two hours (Ex 8, Jackson SAP form; Ex 4, Grams' deposition at pp. 106-107). Jackson told Grams she would recommend him for out-patient treatment and she would recommend his immediate return to work. (Ex 4, Grams' deposition at pp. 111, 118, 135; Ex 9, Stafford's interview notes of Jackson; Ex 14, Stafford's affidavit).

Grams learned he would never return to a driving position on or about July 6, 2009, when Rhodes showed Grams Stoddard's June 29, 2009 email. (Ex 4, Grams' deposition at pp. 122-123; Ex 6, Rhodes' deposition at pp. 79-80). Defendant never told Grams when he would report to work on the dock but did discuss the possibility of Grams' returning as a part-time dock

worker. (Ex 4, Grams' deposition at pp. 141, 152). Defendant told Grams that as a part-time worker, Grams would earn $12.00 per hour, work approximately 20 hours per week, and receive no benefits. (Ex 4, Grams' deposition at p. 122). In his driving position, Grams earned $21.60 per hour, worked a full-time schedule, and received health and retirement benefits. (Ex 4, Grams' deposition at pp. 192-193).

Grams reported to the terminal on July 24, 2009, and told Rhodes that he refused to quit his job because he had done nothing wrong. (Ex 10, Rhodes' email dated July 24, 2009 3:29 pm; Ex 6, Rhodes' deposition at p. 101). Rhodes informed Stoddard by email that Grams refused to quit, and less than thirty minutes later, Stoddard told Rhodes to proceed with the discharge of Grams based upon job abandonment. (Ex 10, Stoddard's email dated July 24, 2009 3:58 pm).

The Commission filed its Complaint on August 16, 2011, to correct unlawful employment practices on the basis of disability in violation of Title I of the Americans with Disabilities Act of 1990 (ADA), as amended by the Americans with Disabilities Act Amendment Act of 2008 (ADAAA), and Title I of the Civil Rights Act of 1991. The Complaint alleges the unlawful practices include the failure to accommodate Charles Grams and his subsequent discharge because of his disability. The Complaint also alleges Defendant's policy of refusing to return any employee who self-reported alcohol abuse from ever driving violated the ADA.

## II. Summary Judgment Standard

The Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Whether a genuine issue of material fact is presented will be determined by asking if a reasonable jury could return a verdict for the non-moving party. *Id*. The moving party bears "the initial responsibility of informing the district court of the basis of its motion and identifying those portions of the record that show the lack of a genuine issue. *Hardnagel v. v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). If the nonmoving party fails to establish a factual dispute on an essential element of its case, the court must grant summary judgment for the moving party. *Simpson v. Des Moines Water Works*, 425 F.3d 538,542 (8th Cir. 2005). The Commission has met its burden of proof for the Court to deny Defendant's motion for summary judgment.

III.   Argument

    **A. DOT Regulations Are Inapplicable to the Case at Bar Because Grams Did Not Have a Clinical Diagnosis of Alcoholism**

Defendant first argues there is no dispute regarding Grams' alcoholism. (Docket No. 88 at p. 7). This statement is simply not true. Defendant argues that Grams had a clinical diagnosis of alcoholism, and as such, he was not qualified to drive under the Federal Motor Carrier Safety Regulations (FMCSR). Because Grams did **not** have a clinical diagnosis of alcoholism[3] when Defendant took its adverse action against him, Defendant's argument is not applicable. (Emphasis added).

After spending the weekend of June 26-28, 2009, drinking, Grams determined he needed to get help and he **might be** an alcoholic. (Ex 4, Grams' deposition at p. 42, 69)(Emphasis added). On Monday, June 29, 2009, Grams called Tilden Thornton, his supervisor, and told Thornton he **might be** an alcoholic, and he would not report to work that day because he needed

---

[3] Defendant reference at footnote 6 of its memorandum in support of its motion (Docket 88 at p. 7) is inapplicable to this case. What the medical community will do in the future has no bearing on this case.

4

to get immediate help and was going to Alcoholics Anonymous (AA) (Ex 4, Grams' deposition at pp. 45-46; Ex 5, Thornton's deposition at p. 16)(Emphasis added).  At this point in time, Grams had not received any diagnosis of his condition and simply reported what he believed **might be** the case.  (Emphasis added).   Without having any additional information on Grams' condition, Defendant immediately suspended Grams from driving pursuant to its own policy, a policy that violates the ADAAA.  Defendant's policy requires any driver who self-reports an issue with alcohol to be immediately suspended from driving and never returned to driving.  (Ex 11, Stoddard's deposition at pp. 44-45, 95-96, 98).

       Defendant argues that SAP Jackson's report and Grams' later testimony support the fact that Grams had a clinical diagnosis of alcoholism.  As previously stated, Grams determined he had a problem with alcohol following the weekend of June 26-28, 2009.  (Ex4, Grams' deposition at pp 45-46).  Prior to that time, Grams did not believe he was an alcoholic.  (Ex4, Grams' deposition at pp. 190-191).  Grams did not meet with SAP Jackson until July 1, 2009.  SAP Jackson's report did not give Grams a clinical diagnosis of alcoholism.  The report stated Grams exhibited symptoms of alcohol abuse, and SAP Jackson recommended that Defendant immediately return Grams to work.  (Ex 8 Jackson SAP report; Ex 4, Grams' deposition at p. 118).   The form prepared by Jackson specifically states the report was a pre-diagnostic impression.  (Ex 8, Jackson SAP report).

        Defendant also cannot rely on Grams' testimony at his deposition held on March 12, 2013, to support its contention that Grams had a clinical diagnosis of alcoholism on June 29, 2009. While Grams may have testified that he believed he was an alcoholic, this admission is required by Step One of Alcoholics Anonymous (AA).  (Ex 12, Grams' affidavit).  To succeed in

5

his attempts to overcome his alcohol use, Grams had to first admit he was an alcoholic. Grams' admission in 2013 does not qualify as a clinical diagnosis.

Significantly, Defendant misapplies the guidelines of 49 C.F.R. § 121(a) by arguing to this Court that this section applies to Grams' situation. 49 C.F.R. § 121(a) only applies in situations in which an employer has a written voluntary reporting policy. 49 C.F.R. § 121 states the following in its entirety:

> § 382.121   Employee admission of alcohol and controlled substances use.
>
> (a) Employees who admit to alcohol misuse or controlled substances use are not subject to the referral, evaluation and treatment requirements of this part and part 40 of this title, provided that:
>
> (1) The admission is in accordance with a written employer-established voluntary self-identification program or policy that meets the requirements of paragraph (b) of this section;
>
> (2) The driver does not self-identify in order to avoid testing under the requirements of this part;
>
> (3) The driver makes the admission of alcohol misuse or controlled substances use prior to performing a safety sensitive function (i.e., prior to reporting for duty); and
>
> (4) The driver does not perform a safety sensitive function until the employer is satisfied that the employee has been evaluated and has successfully completed education or treatment requirements in accordance with the self-identification program guidelines.
>
> (b) A qualified voluntary self-identification program or policy must contain the following elements:
>
> (1) It must prohibit the employer from taking adverse action against an employee making a voluntary admission of alcohol misuse or controlled substances use within the parameters of the program or policy and paragraph (a) of this section;
>
> (2) It must allow the employee sufficient opportunity to seek evaluation, education or treatment to establish control over the employee's drug or alcohol problem;

> (3) It must permit the employee to return to safety sensitive duties only upon successful completion of an educational or treatment program, as determined by a drug and alcohol abuse evaluation expert, i.e., employee assistance professional, substance abuse professional, or qualified drug and alcohol counselor;
>
> (4) It must ensure that:
>
> (i) Prior to the employee participating in a safety sensitive function, the employee shall undergo a return to duty test with a result indicating an alcohol concentration of less than 0.02; and/or
>
> (ii) Prior to the employee participating in a safety sensitive function, the employee shall undergo a return to duty controlled substance test with a verified negative test result for controlled substances use; and
>
> (5) It may incorporate employee monitoring and include non-DOT follow-up testing.

Defendant chooses to take a portion of this section, Section (a), and apply it to Grams without informing this Court of the rest of the applicable portions of the guidelines. Since Section (a) is only applicable if Grams' admission was in accordance with "a written employer-established voluntary self-identification program or policy that meets the requirements of paragraph (b) of this section," it is not at all applicable because Defendant did not have a program or policy that met the requirements of paragraph (b). Brian Stoddard admitted as much in his deposition when he stated:

> Q. Does Old Dominion have a written employer-established voluntary self-identification program or policy regarding employees who admit to the use of alcohol or controlled substances pursuant to 49 CFR, section 382.121?
>
> A. No, we don't have a written policy. We have standard operating procedures.

(Ex 11, Stoddard's deposition at p. 18)

Additionally, Defendant's cite to 49 C.F.R. §40.305(b) does not apply to the facts of this

case. This provision, which Defendant alleges "prevents an employer from returning a driver, who self reports alcohol misuse, from performing safety-sensitive duties (i.e. driving) until the driver has complied with the recommended treatment plan of a DOT-qualified SAP" (Docket No. 88 at p. 6) does not mention the words "who self reports alcohol misuse." 49 C.F.R. § 40.305 states the following in its entirety:

> (a) As the employer, if you decide that you want to permit the employee to return to the performance of safety-sensitive functions, you must ensure that the employee takes a return-to-duty test. This test cannot occur until after the SAP has determined that the employee has successfully complied with prescribed education and/or treatment. The employee must have a negative drug test result and/or an alcohol test with an alcohol concentration of less than 0.02 before resuming performance of safety-sensitive duties.
>
> (b) As an employer, you must not return an employee to safety-sensitive duties until the employee meets the conditions of paragraph (a) of this section. However, you are not required to return an employee to safety-sensitive duties because the employee has met these conditions. That is a personnel decision that you have the discretion to make, subject to collective bargaining agreements or other legal requirements.
>
> (c) As a SAP or MRO, you must not make a "fitness for duty" determination as part of this re-evaluation unless required to do so under an applicable DOT agency regulation. It is the employer, rather than you, who must decide whether to put the employee back to work in a safety-sensitive position.

Additionally, this section is only applicable if the driver should have been referred to a SAP in the first place. DOT governs when an employer must refer a driver to a SAP for treatment, and DOT regulations did not require Defendant to force Grams to report to a SAP for evaluation before returning to work. 49 CFR § 40.285(b) outlines when a SAP evaluation is required as follows:

> (a) As an employee, when you have violated DOT drug and alcohol regulations, you cannot again perform any DOT safety-sensitive duties for any employer until and unless you complete the SAP evaluation, referral, and education/ treatment process set forth in this subpart and in applicable DOT agency regulations. The first step in this process is a SAP evaluation.

> (b) For purposes of this subpart, a verified positive DOT drug test result, a DOT alcohol test with a result indicating an alcohol concentration of 0.04 or greater, a refusal to test (including by adulterating or substituting a urine specimen) or any other violation of the prohibition on the use of alcohol or drugs under a DOT agency regulation constitutes a DOT drug and alcohol regulation violation.

The key language in this section is "when you have violated DOT drug and alcohol regulations." 49 CFR § 382.503 outlines the process when an employee is required to be evaluated and tested, and none of these situations applied to Grams. 49 CFR § 382.503 states the following:

> No driver who has engaged in conduct prohibited by subpart B of this part shall perform safety-sensitive functions, including driving a commercial motor vehicle, unless the driver has met the requirements of part 40, subpart O, of this title. No employer shall permit a driver who has engaged in conduct prohibited by subpart B of this part to perform safety-sensitive functions, including driving a commercial motor vehicle, unless the driver has met the requirements of part 40, subpart O, of this title.

Subpart B requires an employer to remove a driver from a safety-sensitive position, including driving, if any of the following criteria exist:

> Alcohol concentration. No driver shall report for duty or remain on duty requiring the performance of safety-sensitive functions while having an alcohol concentration of 0.04 or greater. No employer having actual knowledge that a driver has an alcohol concentration of 0.04 or greater shall permit the driver to perform or continue to perform safety-sensitive functions. 49 CFR § 382.201.
>
> On-duty use. No driver shall use alcohol while performing safety-sensitive functions. No employer having actual knowledge that a driver is using alcohol while performing safety-sensitive functions shall permit the driver to perform or continue to perform safety-sensitive functions. 49 CFR § 382.205.
>
> Pre-duty use. No driver shall perform safety-sensitive functions within four hours after using alcohol. No employer having actual knowledge that a driver has used alcohol with four hours shall permit a driver to perform or continue to perform safety-sensitive functions. 49 CFR § 382.207.
>
> Use following an accident. No driver required to take a post-accident alcohol test

> under § 382.303 shall use alcohol for eight hours following the accident, or until he/she undergoes a post-accident alcohol test, whichever occurs first. 49 CFR § 382.09.
>
> Refusal to submit to a required alcohol or controlled substances test. No driver shall refuse to submit to a post-accident alcohol or controlled substances test required under § 382.303, a random alcohol or controlled substances test required under § 382.305, a reasonable suspicion alcohol or controlled substances test required under § 382.307, or a follow-up alcohol or controlled substances test required under § 382.311. No employer shall permit a driver who refuses to submit to such tests to perform or continue to perform safety-sensitive functions. 49 CFR § 382.211.

Defendant did not have actual knowledge that Grams alcohol concentration was 0.04 or higher when he reported his problem because Defendant did not test Grams. (Ex 6, Rhodes' deposition at pp. 58-59). On June 29, 2009, Grams did not report for duty to a safety-sensitive position. On that day Grams called his supervisor to request the day off to get help. Later that afternoon when Grams actually reported to the terminal, he did not report to perform a safety-sensitive function. By the same token, on June 29, 2009, Grams did not report for **duty** within four hours of using alcohol. Finally, on June 29, 2009, Grams did not refuse to take a post-accident alcohol test, nor did he refuse to submit to an alcohol test. Brian Stoddard acknowledged that none of the criteria set forth in subpart B were applicable to Grams. (Ex 11, Stoddard's deposition at pp. 39-40). Defendant alleges that 49 C.F.R. Part 40 mandated it to refer Grams to a SAP; however, Defendant cites no specific section of 49 C.F.R. Part 40 that states this under the circumstances under which Grams self-reported. 49 C.F.R. Part 40 has subparts A-R. Each of those subparts contains additional sections. To print this document requires 101 pages, yet Defendant could not cite one specific section applicable to the facts of this case.

Defendant points out that the Commission alleged in its Complaint and Amended

Complaint Grams could not be returned to driving until he completed the SAP's treatment plan. The fact is, the Commission was simply wrong. And as previously discussed, Defendant's specific cite to 49 C.F.R. § 382.12(a) does not apply to the facts of this case. Defendant took the action it did strictly because of its policy and because of its stereotypical fears about alcoholics.

Also as previously discussed, Grams had not violated DOT drug or alcohol regulations because he had not violated any of the provisions of subpart B. As such, Defendant's decision to require Grams to see a SAP was not required by DOT regulations.

### B. Grams Is Disabled under the ADA

To state a *prima facie* case of discrimination under the ADA and the ADAAA, the Commission must show that Grams (1) has a disability within the meaning of the ADA, (2) is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action because of his disability." *St. Martin v. City of St. Paul,* 680 F.3d 1027, 1032 (8th Cir. 2012). The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions. If the employer articulates such a reason, the burden returns to the plaintiff to show the employer's justification is a pretext. *Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010).

### 1. Grams Has a Disability Under the ADA

To prevail on its claim, the Commission must first show that Grams is disabled within the meaning of the ADA. Under the ADA a disability is defined as a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such impairment, or being regarded as having such an impairment. 42 U.S.C. §12102(2). With the passage of the ADAAA of 2008, Congress asserted its intention "to restore the intent and

11

protections of the Americans with Disabilities Act of 1990." Pub. L. No. 110-325, preamble, 122 Stat. 3553 (2008).  Congress declared that a purpose of the ADAAA was to "reinstate a broad scope of protection to be available under the ADA."  *Id.* § 2(b)(1).

Under the ADAAA, "the definition of disability shall be construed in favor of broad coverage of individuals…, to the maximum extent permitted by the terms of this chapter."  42 U.S.C. § 12102(4)(A).  The ADAAA specifically rejected the standards enunciated by the Supreme Court in *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184 (2002) whereby to be substantially limited in performing a major life activity under the ADA an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  ADAAA, § 2(b)(4).  The ADAAA expressly aimed to expand the definition of disability and to shift the burden to the employer to comply with the regulations of the ADA.  Pub.L. 110–325, § 2(b)(1), (2), (4), (5).

To that end, the ADAAA includes the provision that "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).  This certainly applies to the disease of alcoholism.  When an individual is under the influence of alcohol, he is substantially limited in several major life activities, i.e., standing, walking, caring for himself, cognitive thinking, etc.  Additionally, alcohol affects one's ability to think and reason while under the influence.  Finally, continued alcohol use affects an individual's internal organs such as the liver by reducing its functioning capacity.  The Eighth Circuit recognizes alcoholism as a disability by stating that "alcoholism qualifies as a disability for the purposes of the ADA."  *Miners v. Cargill Communications, Inc.*, 113 F.3d 820 (8th Cir. 1997).

Defendant only argues that Grams was not substantially limited in the major life activity of working. Because the facts show Grams was substantially limited in many major life activities as discussed above, the Commission meets this element.

### 2. Grams Was Qualified Under the ADA

To be a qualified individual under the ADA, an employee must (1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation. *Kallail v. Alliant Energy Corporate Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012). Defendant argues that Grams was not qualified to drive under DOT regulations because he had a clinical diagnosis of alcoholism. As previously discussed, the Commission has shown that argument is simply disingenuous. Grams did not have a clinical diagnosis of alcoholism, and Grams had not violated DOT regulations. No DOT regulation required Defendant to remove Grams from driving. No DOT regulation mandated Defendant to require Grams to complete a SAP treatment program. Defendant's reliance on *Wyatt v. J.B. Hunt Transport, Inc.*, No. 4:08CV01501, 2009 WL 652723 (E.D. Ark. March 12, 2009) and the other cases it cites outside the Eighth Circuit is misplaced. The plaintiff in *Wyatt*, as did the plaintiffs in the other cases cited by Defendant, had a clinical diagnosis of alcoholism. The plaintiff in *Wyatt* received his diagnosis at the time he **completed** his treatment when he was diagnosed as being alcohol dependent and an abuser of cannabis. (Emphasis added). Grams never entered treatment (Ex 4, Grams' deposition at p. 128); therefore, he did not receive a diagnosis at the conclusion of any treatment.

Finally, Grams testified that he would have participated in the outpatient treatment if Defendant would have returned him to driving at the completion of the treatment. (Ex 4, Grams'

13

deposition at pp. 127-128). In fact, Grams testified that he would have sold everything he had to go to treatment if he were going to be returned to a full-time job. (Ex 4, Grams' deposition at pp. 127-128). DOT regulations do not prevent employees who self report for alcohol abuse from ever returning to driving positions. (*See* 49 CFR § 40.305).

Because Defendant does not argue against the third element of *prima facie* case, i.e. Grams suffered an adverse action, Defendant appears to concede this element. Because of this concession, the Commission will not address that element.

### 3. Defendant's Proffered Reason is Pretext

As discussed in Plaintiff's Motion for Summary Judgment, Defendant attempts to justify its reason for refusing to return Grams to a driving position by alleging safety concerns. The Commission shares Defendant's concerns regarding drinking and driving; however, Defendant can implement safety measures for drivers without violating the ADA by looking at each employee who self-reports on a case-by-case basis.

Defendant attempts to argue that its policy does not violate the ADA pursuant to 49 C.F.R. § 40.305(b)(Docket No. 88 at p. 16). Once again, Defendant only cites a portion of the regulation. Defendant cites 49 C.F.R. § 40.305(b) for the proposition that its policy does not violate the ADA because DOT gives employers discretion concerning whether or not to return an employee to a driving position. Defendant fails to inform this Court of the "rest of the story." DOT regulations point out that this discretion is subject to other legal requirements. 49 CFR § 40.305 states the following:

> (a) As the employer, if you decide that you want to permit the employee to return to the performance of safety-sensitive functions, you must ensure that the employee takes a return-to-duty test. This test cannot occur until

14

        after the SAP has determined that the employee has successfully complied with the prescribed education and/or treatment. The employee must have a negative drug test result and/or an alcohol test with an alcohol concentration of less than 0.02 before returning performance of safety-sensitive duties.

  (b) As an employer, you must not return an employee to safety-sensitive duties until the employee meets the conditions of paragraph (a) of this section. However, you are not required to return an employee to safety-sensitive duties because the employee has met these conditions. That is a personnel decision that you have the discretion to make, subject to collective bargaining agreements or **other legal requirements.** (Emphasis added).

While DOT regulations leave an employer the discretion of returning an employee to a safety-sensitive position, DOT regulations do not leave an employer the discretion of violating the ADAAA. DOT regulations specifically state that the employer's decision remains subject to other legal requirements. The requirements of the ADAAA constitute such legal requirements. Despite Defendant's assertions to the contrary, the Commission has never attempted to use the ADAAA to restrict or override Defendant's obligations under DOT regulations. (Docket 88 at p. 17). The Commission is not now, nor has it ever, requested Defendant to automatically return every driver who self-reports an alcohol problem to a driving position. The Commission simply argues that Defendant can follow DOT regulations, ensure safety, **and** follow the ADA by conducting an individualized assessment for an employee who reports an alcohol problem. Because Defendant can follow the law regarding the ADAAA without violating DOT regulations, Defendant is required to do so.

    The Commission certainly "has every authority to interfere with a motor carrier's discretion under the DOT regulations" (Docket No. 88, pp. 17-18) when the Commission's

"interference" is not in contravention of DOT regulations and the motor carrier's actions are in violation of the law. The Commission is the agency of the United States government charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring actions by § 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference § 706(f)(1) of Title VII, 42 U.S.C § 2000e-(5)(f)(1). As such, the Commission is obligated to enforce the law.

Defendant also argues that the Commission's position "that Old Dominion should perform an individualized assessment of its drivers before determining who can and cannot return to driving status is an unreasonable expectation." (Docket No. 88 at p. 18). The requirement of an individualized assessment is not an expectation of the Commission; it is a requirement set forth by the ADA. (*See* 29 C.F.R. § 1630(j)(1)(iv).

The Commission succinctly set forth in its Motion for Summary Judgment that, had Defendant conducted an individualized assessment with regard to Charles Grams, it likely would have determined Grams did not pose a significant risk. Grams has worked as a driver for two motor carriers since his termination by Defendant. (Ex 4, Grams' deposition at pp. 20-21).

**C. The Commission Has the Authority to Challenge Defendant's Policy**

The Commission asserts that Defendant's policy related to self-reporting alcohol abuse violates the ADAAA. The Commission derives the statutory authority to plead a policy violation from the ADA. As discussed in its Motion for Summary Judgment, the Commission's authority to plead a policy violation has been recognized by federal courts. *See Holly v. Clairson Industries, L.L.C.* 492 F.3d 1247, 1258 (11th Cir. 2007); *Bower et al v. Federal Exp. Corp.* 156 F.Supp.2d 678, 686 (W.D.Tenn. 2001). Defendant argues that this provision only provides for a

16

challenge to the employment practices that affect a qualified individual, and without a qualified individual, the Commission cannot make a claim. (Docket 88 at p. 19). Defendant cites no law in support of this position.

## III.     Conclusion

For the foregoing reasons, the Commission requests that the Court deny Defendant's Motion for Summary Judgment and grant the Commission's Motion for Summary Judgment on the issue of Defendant's liability.

**P. DAVID LOPEZ**
General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

**FAYE A. WILLIAMS**
Regional Attorney
TN Bar No. 011730

**JOSEPH M. CROUT**
Supervisory Trial Attorney
TN Bar No. 012957

/s Markeisha K. Savage__
**MARKEISHA K. SAVAGE**
Trial Attorney
AR Bar No.2011288

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Memphis District Office
1407 Union Avenue, Suite 901
Memphis, Tennessee 38104
(901) 544-0133

>*/s/*Pamela B. Dixon
>**PAMELA B. DIXON**
>Senior Trial Attorney
>AR Bar No. 95085
>
>EQUAL EMPLOYMENT
> OPPORTUNITY COMMISSION
>Little Rock Area Office
>820 Louisiana St., Suite 200
>Little Rock, Arkansas  72201
>(501) 324-5065
>pamela.dixon@eeoc.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

James H. Hanson
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
10 W. Market Street, Ste. 1500
Indianapolis, IN  46204

Sara L. Pettinger
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
30 West Monroe Street, Ste. 600
Chicago, IL  60603

Don A. Smith
Smith, Cohen & Horan, PLC
1206 Garrison Avenue
Fort Smith, AR  72917


May 24, 2013                                                                          */s/*Pamela B. Dixon___
Date                                                                                         Pamela B. Dixon

18