IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION                                                       PLAINTIFF

v.          Civil No. 11-2153

OLD DOMINION FREIGHT LINE, INC.                                  DEFENDANT

### AMENDED AND SUBSTITUTED ORDER

Now on this 26th day of June, 2013, the Court enters this Amended And Substituted Order regarding **Plaintiff's Motion For Summary Judgment On The Issue Of Liability** (document #84) and **Defendant's Motion For Summary Judgment** (document #87), for reasons set forth in ¶ 5(a) hereof:

1. Plaintiff Equal Employment Opportunity Commission ("EEOC") brought suit upon the charge of Charles Grams ("Grams") that he was denied reasonable accommodation and his employment was terminated in violation of the Americans With Disabilities Act as amended by the Americans with Disabilities Amendment Act (the "ADA" or "Act"), due to a policy of defendant Old Dominion Freight Line, Inc. ("Old Dominion").

The challenged policy, according to the EEOC, prohibits any Old Dominion driver impaired by alcoholism[1] from returning to a commercial driving position, and conditions return to a non-

---

[1] Several different terms are used in the pleadings and the briefs to refer to conditions related to the misuse of alcohol, including alcohol abuse, alcohol dependence, and alcoholism. In this Order the Court will use the term alcoholism -- which appears to be a lay term -- merely for convenience and consistency.

driving position upon enrollment in a substance abuse treatment program.

EEOC seeks compensatory and punitive damages for Grams[2], and injunctive relief preventing Old Dominion from enforcing the challenged policy

2.   Old Dominion admits that it is a covered entity under the ADA, and that all conditions precedent to the institution of the ADA claim have been satisfied, but denies that it violated the Act in any way.  Both parties now move for summary judgment, and the motions are ripe for decision.

3.   The standard governing evaluation of a motion for summary judgment has been well summarized as follows:

> [S]ummary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.  If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. . . . The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial.  Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

**Torgerson v. City of Rochester**, 643 F.3d 1031, 1042 (8th Cir.

---

[2] EEOC initially also sought damages for other affected drivers, but it appears to have abandoned all individual claims except that of Grams.

**2011)** (internal citations and quotation marks omitted).

Where there are genuine factual disputes, the Court is required to view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment. **Scott v. Harris**, 550 U.S. 372, 378 (2007).

4.   Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

 *   Old Dominion is a for-hire motor carrier company providing worldwide transportation services.

 *   Charles Grams obtained a commercial drivers license ("CDL") in 1991 or 1992, and began employment as a commercial driver for Old Dominion on November 29, 2004.

 *   As a commercial driver, Grams knew and understood the requirements of the Federal Motor Carrier Safety Regulations ("FMCSRs").

 *   Grams worked for Old Dominion for five years without any major accidents or incidents.

 *   On June 29, 2009, Grams telephoned his supervisor, Tilden Thornton, and informed Thornton that he drank too much alcohol over the weekend; that he thought he was an alcoholic; and that he was going to an Alcoholics Anonymous ("AA") meeting.

 *   Thornton advised Grams that Grams needed to talk to Luke

-3-

Rhodes, Manager of the Fort Smith Service Center where Grams worked. Thornton then contacted Rhodes to let him know about Grams' disclosure.

* Rhodes, in turn, contacted David Bates, Regional Vice President of Old Dominion. Bates brought the matter to the attention of Brian Stoddard, Old Dominion's Vice President of Safety and Personnel.

* Stoddard instructed Rhodes to remove Grams from his driving position, and told him that Grams had to be evaluated by a Substance Abuse Professional ("SAP") qualified by the Department of Transportation ("DOT"). Stoddard further told Rhodes that Grams could not be returned to work until he completed treatment and was released to return to work, and that once Grams was returned to work, he would not be permitted to return to a driving position.

* Old Dominion has an unwritten policy that it will not allow a driver who has self-disclosed an alcohol problem to ever return to driving status.

* Later in the day on June 29, 2009, Grams went to the Fort Smith Service Center to talk to Rhodes. Rhodes told Grams that he was suspended from driving and conveyed Stoddard's instructions about the steps he needed to take before he would be eligible to return to work, but did not tell Grams that he would be disqualified from driving regardless of what treatment he

received.  At Grams' request, Rhodes located a DOT-qualified SAP, Lisa Jackson, and gave Grams her contact information.

\*   On July 1, 2009, Grams was evaluated by Jackson, who recommended a course of outpatient treatment.

\*   On July 6, 2009, Grams again met with Rhodes, and expressed concern about his inability to pay the out-of-pocket portion of the treatment recommended by Jackson.  At this meeting Grams learned that he would not be allowed to return to a driving position under any circumstances, and that the only non-driving position available at the Fort Smith Service Center was as a part-time dock worker.

\*   On or about July 24, 2009, Grams told Rhodes that because insurance only covered 60% of the cost of outpatient treatment, and because he could not afford the out-of-pocket portion, he would not be doing the recommended outpatient treatment.  Rhodes advised Grams that he needed to complete the treatment as a condition of continued employment.

\*   On or about July 24, 2009, Old Dominion terminated Grams.

\*   Grams did not try to obtain coverage for the outpatient treatment under his wife's health insurance, or seek financial assistance for the treatment.  Grams never attended the outpatient treatment recommended by the SAP, but he did attend AA meetings.

\*   Old Dominion did not conduct an individualized

-5-

assessment with regard to any risk that would be posed by returning Grams to a driving position.

5.  An individual seeking to recover under the ADA on a claim of disability discrimination must establish:

* that he is a disabled person as defined by the ADA;

* that he is qualified to perform the essential functions of his job with or without reasonable accommodation; and

* that he suffered an adverse employment action because of his disability.[3]

**St. Martin v. City of St. Paul, 680 F.3d 1027 (8th Cir. 2012).**

(a)  **Is Grams a Disabled Person?**

The term "disability" as used in the ADA means "a physical or mental impairment that substantially limits one or more major life activities," a record of such impairment, or being regarded as having such impairment.  **42 U.S.C. § 12102(1).** Alcoholism is an impairment covered by the ADA.  **Miners v. Cargill Communications, Inc., 113 F.3d 820, 823 n. 5 (8th Cir. 1997).**

Old Dominion contends that Grams is not disabled by alcoholism because it does not "substantially" limit his ability to work, in that Grams has not shown that he is restricted from a class of jobs or a broad range of jobs in many classes.

This argument ignores the fact that work is not the only

---

[3] Old Dominion does not dispute that Grams' suspension from driving and relegation to a dock worker position constitutes an adverse employment action.

major life activity covered by the Act that is limited by alcoholism. Seeing, walking, speaking, learning, concentrating, thinking, and communicating are other major life activities that might also be limited. **42 U.S.C. § 12102(2)(A).**

The argument also overlooks the fact that Old Dominion treated alcoholism as something that required treatment before Grams could even work as a dock hand, from which reasonable jurors might conclude that being regarded as an alcoholic would substantially limit Grams' ability to work in a broad range of jobs in many classes.

Viewing the evidence in the light most favorable to Grams, and giving it the reasonable inferences favorable to Grams, the Court believes that Grams can present evidence from which jurors, who may use their common sense in deciding cases, could determine that Grams is a disabled person under the Act.

(b) **Is Grams Qualified To Perform The Essential Functions of His Job?**

A person is "qualified" under the ADA if he can, "with or without reasonable accommodation, perform the essential functions of the employment position." **42 U.S.C. § 12111(8).**

Old Dominion does not dispute the fact that, until June 29, 2009, Grams carried out the essential functions of his job as a commercial driver to his employer's satisfaction, *i.e.*, that he was qualified by training, experience and skill to do the job.

Its qualification argument focuses on the safety justifications that underpin its no-return policy. Noting that driving an 80,000 pound commercial vehicle is a safety-sensitive function (*see* **49 C.F.R. § 382.503**), Old Dominion states that it has made an appropriate policy decision that it is unsafe to entrust the driving of such a vehicle to an alcoholic under any circumstances, given the possibility of a relapse and the difficulty of supervising an employee who essentially carries out his job duties alone.

Old Dominion also argues that Grams is not qualified because he did not complete the treatment recommended by the SAP, so **49 C.F.R. § 40.301(d)** prohibits it from returning him to safety-sensitive duties, and that, even if he had completed the treatment program, the FMCSRs do not require it to return a driver to a safety-sensitive position upon successful completion of the referral/evaluation/treatment process. **49 C.F.R. § 40.305(b)**.

In response to these arguments, EEOC contends that the referral/evaluation/treatment process should not ever have been required of Grams and that Old Dominion's "no-return" policy is a violation of the ADA as a matter of law.

The dispute concerning the referral/evaluation/treatment program arises from the structure of the FMCSRs:

> \*    These regulations require that a driver must successfully complete the referral/evaluation/treatment process

before a return to driving if he commits a DOT alcohol regulation violation.  **49 C.F.R. § 40.285(a).**

\*    They also prescribe a similar process in situations where a driver's alcohol problem comes to the employer's attention through a voluntary report by the driver rather than as a result of a DOT violation -- as long as the employer has a "written employer-established voluntary self-identification program or policy." **49 C.F.R. § 382.121(a).**

\*    The regulations are less clear, however, as to what is required to be done if a driver self-reports an alcohol problem and the employer has no such written program or policy.

Notwithstanding this lack of clarity in the regulations with respect to a self-reporting situation like this one, the Court does not accept EEOC's contention that Old Dominion could not require Grams to complete the referral/evaluation/treatment process.  The applicable regulation, **49 C.F.R. § 382.121(a),** provides that

> "[e]mployees who admit to alcohol misuse . . . are not subject to the referral, evaluation and treatment requirements of this part[4] and part 40 of this title, provided that: (1) The admission is in accordance with a written employer-established voluntary self-identification program or policy. . . ."

The FMSCRs "establish programs designed to help prevent accidents and injuries resulting from the misuse of alcohol . . .

---

[4] The "referral, evaluation, and treatment" requirements of "this part" are found in Part 40, Subpart O.  49 C.F.R. § 382.605.

-9-

by drivers of commercial vehicles." **49 C.F.R. § 382.101.** It is reasonable to interpret them in such a way as to accomplish that worthy goal. In light of this purpose, the Court interprets **§ 382.1010** to mean that drivers who admit to alcohol misuse where there is no written company policy *are* subject to the referral/evaluation/treatment requirements of Part 40.

It, therefore follows that, because Old Dominion did not have a written voluntary self-identification program or policy, when Grams made his telephone call to Thornton on June 29, 2009, he became subject to the referral/evaluation/treatment requirements of Part 40 -- and specifically to Subpart O. The Court believes this conclusion to be sound even though Grams had not committed a DOT violation (the trigger for action under Subpart O) because a contrary interpretation would run counter to the overall purposes of **§ 382.121.**

For the foregoing reasons, the Court concludes that Old Dominion did not violate the ADA when -- considering Grams disabled by reason of alcoholism -- it suspended Grams from driving and required him to go through the referral/evaluation/treatment process before returning to a safety-sensitive position.

(c) **Did Old Dominion Afford Grams Reasonable Accommodation?**

EEOC contends that Old Dominion violated the ADA when it failed to accommodate Grams' disability by its no-return policy.

-10-

Old Dominion counters that it could not return Grams to driving a truck because he never completed the referral/evaluation/treatment process, and that it was not required by DOT regulations to reinstate him even if he did complete the process. Old Dominion also contends that as a matter of business necessity and concern for public safety it made a policy decision that alcoholic drivers in its employ could never return to driving.

(1)  As to the first of these arguments, the Court notes that there is evidence from which reasonable jurors could conclude that the reason Grams did not complete the referral/evaluation/treatment process was that he was disheartened by learning that he would not be allowed to return to driving even if he did complete it, and that he legitimately felt there was no point in using his limited financial resources to pay for treatment that had no prospect of helping him get his job back. Thus, this argument is not persuasive.

(2)  The second argument is also not persuasive, in that it amounts to a contention that Old Dominion can completely refuse to consider any and all accommodations for a driver who is disabled by alcoholism.

It is discriminatory to use qualification standards that screen out an individual with a disability, unless the standard is job-related and consistent with business necessity. **42 U.S.C. §**

-11-

**12112(b)(6).** The "business necessity" of not having an alcoholic driving a commercial vehicle is served by the referral/evaluation/treatment process, but it would serve no business necessity to require the driver to go through this process if there were no possibility that it could result in accommodating the disability of alcoholism.

Old Dominion's safety concerns fall under the ADA rubric of "direct threat," defined as "a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." **29 C.F.R. § 1630.2(r).** The determination of whether an employee presents this type of risk "shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job." *Id.*

Old Dominion's no-return policy admits of no such individualized assessment, and provides no such interactive process. EEOC suggests that a reasonable accommodation might be to install a breathalyzer in Grams' truck to insure that he could not drive it if impaired, but under Old Dominion's policy, such an accommodation -- whether reasonable or not -- cannot even be considered.

While the Court appreciates Old Dominion's safety concerns, its no-return policy -- which fails to even consider the possibility of accommodation -- cannot be justified either on

-12-

public safety concerns or business necessity considerations. For this reason, it violates the ADA as a matter of law, and amounts to a denial of reasonable accommodation to Grams.

5(a). At pre-trial conference on June 25, 2013, Old Dominion moved the Court to amend the instant Order, pursuant to **28 U.S.C. § 1292(b)**, by finding that its decision on the foregoing policy issue is a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from this Order may materially advance ultimate termination of this litigation.

While the Court believes it has rightly decided the policy issue, it agrees that there is substantial ground for difference of opinion on the issue. Moreover, because the policy issue permeates the case as it pertains to possible compensation for Grams as a result of application of the policy to him, the Court is persuaded that an appellate ruling on the policy issue may materially advance ultimate termination of this litigation. Therefore, over objection by EEOC, the Court will make the finding specified in **§ 1292(b)**.

6. EEOC contends that it was also a violation of the ADA to require Grams to successfully complete the referral/evaluation/treatment process before he could work as a dock hand, and to discharge him when he indicated that he was not going to go through the process, but would rely Alcoholics

Anonymous for help instead. Old Dominion contends that it terminated Grams for job abandonment.

The Court believes the evidence -- viewed in the light most favorable to Grams and drawing inferences reasonable to him -- would allow a reasonable jury to find that Old Dominion's claim of job abandonment was a mere pretext for discrimination.

\*   Old Dominion cites no law, rule or regulation classifying dock work as a safety-sensitive position, or otherwise indicating that alcoholism is a disqualification for dock work. It cites nothing that would justify requiring an alcoholic employee to go through the referral/evaluation/treatment process, as opposed to AA or some other type of treatment, before doing dock work.

\*   Grams testified that he told Rhodes he was not quitting, and he called Rhodes on July 6, 2009, to ask when he could return to work.

\*   On July 13, 2009, Grams wrote a "To whom it may concern" letter requesting reinstatement and, that same day, Rhodes e-mailed Stoddard stating that "I am under the understanding that he is ready to return to work as a dock worker as soon as he has started his outpatient treatment, which I believe is tomorrow."

\*   On July 24, 2009, Rhodes e-mailed Stoddard to say that Grams had come by and reported he could not afford treatment since his insurance would only cover 60% of the cost, but that he

-14-

"refused to quit because he felt he had done nothing wrong." Stoddard advised Rhodes to "[p]roceed with job abandonment."

Under this state of the evidence, reasonable jurors could find that Old Dominion violated the ADA by imposing a requirement of referral/evaluation/treatment on an alcoholic employee that it has not shown to be related to either the job or the disability, and then terminating that employee when he did not comply.

7.   Based on the analysis of the issues in this Order, the Court finds that EEOC can make out a prima facie case that Old Dominion discriminated against Grams on the basis of his alcoholism.  For that reason, Old Dominion's Motion For Summary Judgment will be denied.

8.   EEOC's Motion For Summary Judgment will also be denied, because material issues of fact remain to be resolved before any liability on the part of Old Dominion is established.  For example, the following issues (and the Court does not intend this to be an all-inclusive list) remain for jury consideration:

*   Was Grams' disabled under the terms of the ADA, i.e., did his alcoholism substantially limit one or more major life activities?

*   Did Old Dominion's no-return policy deter Grams from completing the referral/evaluation/treatment process?

*   Would Grams have successfully completed the referral/evaluation/treatment process if he had not been so

deterred?

* Does Old Dominion's policy of conditioning reassignment to a non-driving position on successful completion of the referral/evaluation/treatment program violate the ADA?

* Would Grams have accepted a dock worker position if it had not been conditioned on completing the referral/evaluation/treatment program?

* Has Grams sustained damages, and if so, what are they?

9. EEOC also seeks injunctive relief that would force Old Dominion to change its policy relating to alcoholism.

For the reasons set out ¶5 of this Order, the Court finds that Old Dominion's no-return policy violates the ADA as a matter of law. It follows that EEOC is entitled to injunctive relief in the form of an order preventing Old Dominion from enforcing the policy as articulated herein, and such an order will be incorporated in the judgment to be entered when trial of this case is concluded.

**IT IS THEREFORE ORDERED** that **Plaintiff's Motion For Summary Judgment On The Issue Of Liability** (document #84) is **denied**, except as to the Court's determination that Old Dominion's no-return policy violates the ADA as a matter of law, which will be incorporated in the judgment to be entered when this case is concluded.

**IT IS FURTHER ORDERED** that the Court's determination that Old

Dominion's no-return policy violates the ADA as a matter of law is a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal of this Order may materially advance the ultimate termination of this litigation.

**IT IS FURTHER ORDERED** that this case is stayed for ten days, to allow any party to file a notice of appeal from this Order, and that should such notice of appeal be timely filed, the case will be stayed until disposition of such appeal by the Eighth Circuit Court of Appeals.

**IT IS FURTHER ORDERED** that **Defendant's Motion For Summary Judgment** (document #87) is **denied.**

**IT IS SO ORDERED.**

                                               **/s/ Jimm Larry Hendren**
                                               **JIMM LARRY HENDREN**
                                               **UNITED STATES DISTRICT JUDGE**