**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) ) | Civil Action No. 2:11-cv-02153 |
| v. | ) ) | |
| **OLD DOMINION FREIGHT LINE, INC.,** | ) ) ) | |
| Defendant. | ) ) | |

---

**PLAINTIFF'S PRETRIAL DISCLOSURE SHEET**

---

Pursuant to Local Rule 26.2 of the U.S. District Courts for the Western District of Arkansas, Plaintiff Equal Employment Opportunity Commission (Commission) submits its Pretrial Disclosure Sheet.

1.     **The identity of the party submitting the information.**

The United States Equal Employment Opportunity Commission is submitting its disclosures through its counsel, Pamela B. Dixon, Senior Trial Attorney.

2.     **The names, addresses, and telephone numbers of all counsel for the party.**

Faye A. Williams, regional attorney and Markeisha Savage, senior trial attorney, EEOC Memphis District Office, 1407 Union Ave., Ste. 901, Memphis, TN 38104, (901) 544-0088, (901) 544-0133; Pamela B. Dixon, senior trial attorney, EEOC Little Rock Area Office, 820 Louisiana St., Ste. 200, Little Rock, AR 72201, (501) 324-5065.

3.      **A brief summary of claims and relief sought.**

The Commission filed its Complaint on August 16, 2011, alleging Defendant Old Dominion Freight Line Inc. (Defendant) violated Title I of the Americans with Disabilities Act of 1990 (ADA), as amended by the Americans with Disabilities Act Amendment Act of 2008 (ADAAA), and Title I of the Civil Rights Act of 1991 by discriminating against Charles Grams when Defendant failed to accommodate Charles Grams, failed to consider returning Grams to a driving position, and subsequently terminated Grams' employment.  The Complaint also alleges Defendant's policy of refusing to return any employee who self-reports alcohol abuse from ever driving again violates the ADA.  Finally, the Commission alleges Defendant's policy of conditioning reassignment to a non-driving position on the employee's enrollment in a certified substance abuse treatment program violates the ADA.  The Commission is seeking back pay, compensatory damages, and punitive damages for Grams.

By Order dated June 24, 2013, and by Amended and Substituted Order dated June 26, 2013, the Court ruled that Defendant's policy of refusing to return to a driving position any driver who self-reports an alcohol problem violated the ADAAA as a matter of law.  By Second and Amended and Substituted Order dated May 9, 2014, the Court reversed its finding that Defendant's policy violated the ADA as a matter of law.

The Commission seeks relief for Grams, a finding that Defendant's policies violate the ADA as a matter of law, and revision of said policies.  The Commission seeks further injunctive relief to address prospective discrimination.  Finally, the Commission seeks its costs in bringing this action.

4.    **Prospects for Settlement.**

The parties attended a settlement conference on May 29, 2013.  The parties did not reach an agreement at the conference.  The parties have continued to discuss settlement, but settlement appears unlikely.

5.    **The basis for jurisdiction and objections to jurisdiction.**

There are no objections to this Court having jurisdiction to decide this matter.

6.    **A list of pending motions.**

There are no pending motions.  The motion in limine deadline is December 5, 2014, and the Commission expects to file several motions.

7.    **A concise summary of facts.**

Defendant hired Charles Grams on November 29, 2004, as a local driver out of its Fort Smith, Arkansas terminal.  Defendant terminated Grams' employment on July 24, 2009.  Grams worked for Defendant for almost five years without any major accidents/incidents.  Although Grams drank alcohol during his employment with Defendant, Grams did not allow his alcohol use to interfere with his work.  Grams ceased drinking by approximately 4:30 p.m. on work nights to ensure he would be alcohol free by the time he reported to work the next day to drive. Additionally, Grams never reported to work intoxicated or within four hours of drinking alcohol. Neither of Grams' supervisors believed he ever reported to work under the influence of alcohol. Defendant never tested Grams for alcohol following an accident/incident.  Following the weekend of June 26-28, 2009, Grams determined he needed help with his drinking due to his fear of losing his family.  On Monday, June 29, 2009, Grams called Tilden Thornton, his supervisor, and asked for the day off from work.  When Thornton told Grams he could not take off, Grams disclosed to Thornton he might be an alcoholic, he needed help, he would not report to work that

day because he needed to get immediate help, and he was going to Alcoholics Anonymous (AA).

Thornton then contacted Luke Rhodes, terminal manager.  The matter was eventually brought to

the attention of Brian Stoddard, vice president of safety and personnel.  Stoddard instructed

Rhodes to take the following actions:

- Immediately suspend Grams from all work;
- Require Grams to see a DOT certified Substance Abuse Professional immediately;
- Advise Grams to sign a release that authorized Grams' SAP to communicate with Stoddard;
- Advise Grams that he could not return to work until his SAP determined if he could do so and  Stoddard would also have to approve his return;
- Determine whether there was a position available for Grams on the dock;
- Advise Grams that, prior to his return, he would have to sign a "Condition of Continued Employment" agreement that allowed Grams to be tested at any time, and one positive test would result in termination; and
- If and when Grams returned to a **non-driving position**, a copy of the agreement would be sent to Rhodes for Grams' signature.

Grams reported to the terminal later in the day on June 29, 2009, and met with Rhodes.

During this meeting Rhodes outlined the steps necessary for Grams to complete before Grams

could return to work.  Rhodes also assisted Grams in locating a Department of Transportation

(DOT) Substance Abuse Professional (SAP), and Grams scheduled an appointment to meet with

the SAP on July 1, 2009.   Rhodes did not tell Grams on this date that Defendant would never

return him (Grams) to a driving position, even if Grams completed the DOT program.  Pursuant

to Defendant's open door policy, Grams also called Stoddard on June 29, 2009, indicating he

needed help.

Grams met with SAP Jackson on July 1, 2009, and Jackson told Grams she would

recommend Grams for out-patient treatment.  On or about July 6, 2009, Rhodes showed Grams

the Stoddard June 29, 2009 email which stated Grams would never return to a driving position,

and Rhodes told Grams about the possibility of returning to work in a part-time dock worker

position if and when one became available.  Defendant never told Grams when he would report to work on the dock.  As a part-time dock worker, Grams would earn $12.00 per hour, would work approximately 20 hours per week, and would not receive any benefits.  As a driver, Grams earned $21.60 per hour, worked a full-time schedule, and received health and retirement benefits. Grams began attending Alcoholics Anonymous on June 29, 2009, and continues to attend AA meetings to this day.  Grams has not had any alcohol since August 5, 2009, and is currently employed as a commercial truck driver.  Grams did not complete the DOT out-patient-treatment program only because Defendant told Grams it would never return him to a driving position and because the cost of the treatment on a dock worker's salary would cause Grams and his family a financial hardship.  If Defendant had permitted Grams to return to driving, Grams would have found a way to pay for and complete the treatment.

**8.      All proposed stipulations.**

The parties agreed to stipulate to the authenticity of all exhibits[1]; however, relevancy and/or other objections are reserved.  The parties are working on factual stipulations for trial and will submit those to the Court as soon as possible.

**9.      The issues of fact expected to be contested.**

a.      Whether Grams was subjected to disability discrimination.

b.      Whether Grams was disabled.

c.      Whether Grams was a qualified individual with a disability.

d.      Whether Defendant's policy of never returning to a driving position a driver who self-reports an alcohol problem violates the ADAAA.

e.      Whether Defendant's policy of requiring non-driving employees to see a DOT SAP after self-reporting an alcohol problem violates the ADAAA.

---

[1] Defendant objects to the documents the Commission wants to introduce regarding Defendant's financial worth.

f.     Whether DOT regulations required Defendant to immediately remove Grams from his driving position and refer Grams to a DOT SAP counselor.

g.     Whether DOT regulations required Grams to complete a treatment program through a DOT SAP counselor before Defendant returned him to a driving position.

h.     Whether Grams had a clinical diagnosis of alcoholism.

i.     Whether SAP Jackson released Grams to return to work.

j.     Whether Grams is entitled to back pay as a result of the discrimination he was subjected to by Defendant.

k.     Whether Grams is entitled to compensatory damages as a result of the discrimination that he was subjected to by Defendant.

l.     Whether Grams is entitled to punitive damages as a result of the discrimination that he was subjected to by Defendant.

m.     The amounts of backpay and interest that Grams is entitled to because of the discrimination that he was subjected to by Defendant.

n.     The amount of compensatory damages that Grams is entitled to receive.

o.     The amount of punitive damages that Grams is entitled to receive.

p.     Whether Grams was substantially limited in a major life activity during the time he was under the influence of alcohol.

**10.     The issues of law expected to be contested.**

a.     Whether Defendant's policy of requiring non-driving employees to seek treatment from a certified substance abuse treatment program after self-reporting an alcohol problem violates the ADAAA.

b.     Whether Defendant's policy of never returning to a driving position a driver who self-reports an alcohol problem violates the ADAAA.

c.     Whether Grams is entitled to back pay and interest, and if so, in what amounts.

d.     Whether Grams entitled to compensatory damages.

e.     Whether Grams is entitled to punitive damages.

f.     Whether, and to what extent, injunctive relief is appropriate in this case.

g.     Whether Grams was subjected to disability discrimination.

h.     Whether Grams was qualified for the position of truck driver.

i.     Whether Grams had a disability.

j.     Whether Defendant subjected Grams to an adverse action.

k.     Whether Defendant can show a legitimate, non discriminatory reason for the actions it took against Grams.

l.     Whether Defendant's actions against Grams were a pretext for discrimination.

m.     Whether the ADAAA required Defendant to analyze Grams' disability on a case-by-case basis and to conduct an individualized assessment of Grams.

n.     Whether Grams was substantially limited in a major life activity during the time he was under the influence of alcohol.

**11.     A list and brief description of exhibits, documents, charts, graphs, models, schematic diagrams, summaries, and similar objects which may be used in opening, closing argument, or any other part of the trial, other than solely for impeachment purposes, whether or not they will be offered in evidence.  Separately designate those documents and exhibits which the party expects to offer and those which the party may offer.**

a.   The Commission expects to offer the following exhibits:

1.   Grams' hire document.

2.   Grams' termination document.

3.   Grams' Interview Report forms regarding accidents/incidents while working for Defendant.

4.   Tilden Thornton's email dated June 29, 2009, to Luke Rhodes.

5.   Luke Rhodes' email dated June 29, 2009, to David Bates.

6.   All emails between Luke Rhodes and Brian Stoddard dated June 29, 2009.

7.   Emails between Brian Stoddard and Katrena Parker dated December 17, 2008.

8.   Emails between Brian Stoddard and Luke Rhodes dated July 6, 2009.

9.   Emails between Brian Stoddard and Luke Rhodes dated July 13, 2009.

10.   Emails between Brian Stoddard and Luke Rhodes dated July 24, 2009.

11.   Email between Brian Stoddard and Charles Grams dated August 6-7, 2009.

12.   Any emails between Brian Stoddard and Luke Rhodes about Charles Grams.

13.   49 C.F.R § 382.503.

14.   49 C.F.R. § 382.201.

15.   49 C.F.R. § 382.205.

16.   49 C.F.R. § 382.207.

17.   49 C.F.R. § 382.209.

18.   49 C.F.R. § 382.211.

19.   49 C.F.R. § 382.301.

20.    49 C.F.R. § 382.303.

21.    49 C.F.R. § 382.305.

22.    49 C.F.R. § 382.307.

23.    49 C.F.R. § 382.309.

24.    49 C.F.R. § 382.311.

25.    49 C.F.R § 391.41(b)(13).

26.    49 C.F.R. Part 40 Subpart O.

27.    Relevant portions of the Americans with Disabilities Act.

28.    Any exhibit attached to any deposition taken in this matter.

29.    Any exhibit attached to Defendant's or Plaintiff's motion for summary judgment, Defendant's and Plaintiff's responses, and Defendant's and Plaintiff's replies.

30.    SAP Lisa Jackson's report.

31.    SAP Lisa Jackson's report with Brian Stoddard's handwriting.

32.    Charles Grams' violation and review records while working for Defendant.

33.    Charles Grams' letter to Defendant dated July 13, 2009.

34.    A time line of the events as they relate to Charles Grams' contacts with Defendant and Defendant's contacts with Charles Grams.

35.    Deposition transcript excerpts for any witnesses in which the Commission is required to present their direct testimony through deposition.

36.    Brian Stoddard's Reminder of Substance Abuse (Alcohol and Drug Policy) dated February 21, 2007.

37.    Back pay calculations for Charles Grams.

b.    The Commission may offer the following exhibits.

1.    Bob Ashby email dated November 22, 2011.

9

2.  Financial documents regarding Defendant's worth, including, but not limited to, all relevant documents found in the public domain, SEC filings, share holder reports, quarterly reports, etc.

3.  Charles Grams' Charge of Discrimination.

4.  Transcript of unemployment hearing.

5.  Relevant portions of the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV TR.305.00).

6.  Defendant's responses to Plaintiff's Interrogatories, Requests for Production of Documents, Admissions, and its Rule 26 disclosures.

7.  Plaintiff's Pleadings.

8.  Defendant's Pleadings.

**12.     The names, addresses, and telephone numbers of witnesses for the party. Separately identify witnesses whom the party expects to present and those whom the party may call.  Designate witnesses whose testimony is expected to be presented via deposition and, if not taken stenographically, a transcript of the pertinent portion of the deposition testimony.**

a.  **The Commission expects to call the following persons as witnesses:**

1.  Charles Grams
    1524 South 21st Street
    Fort Smith, AR  72901
    479-652-6571

2.  Brian Stoddard
    1410 Sumner Road
    Thomasville, North Carolina 27360
    (336) 476-7967

3.  Luke Rhodes
    4379 East Cromwell Street,
    Springfield, Missouri  65802
     (479) 461-2995

4.     Bobby Sackman
       1109 Falconer
        Charleston, AR 72933
       479-965-6227

5.     Tony Strickland
       701 South 1st Avenue
       Bonanza, AR  72916
       479-926-2298

6.     Helen Lairry
       EEOC Paralegal
       820 Louisiana Street, Ste. 200
       Little Rock, AR  72201
       501-324-5210

7.     Tilden Thornton
       206 Locust Hill Road
       Max Meadows, Virginia  24360
       276-637-3236

**b.     The Commission may call the following witnesses.**

1.     Bob Ashby
       Department of Transportation
       Washington D.C.
       202-366-9310

2.     Old Dominion CFO
       Care of Defendant

3.     David Bates
       Care of Defendant

4.     Claudia Grams
       1161 Oak Haven Road
       Knoxville Tn. 37932
       865-776-0992

5.     Richard Sanford
       4822 South 22nd Street
       Fort Smith, AR 72901

6.     Ricky Hill
       4803 South 22nd Street
       Fort Smith, AR 72901

7.      Shannon Grams
        1524 South 21st Street
        Fort Smith, AR
        479-652-6571

8.      Lisa Jackson
        6941 S. Joplin Ave., Apt. 1219
        Tulsa, OK 74136
        918-346-5862

9.      Misty Wilbanks
        Fort Smith, Arkansas

10.     Any witness listed by Defendant

**13.   The current status of discovery, a precise statement of the remaining discovery and**

**an estimate of the time required to complete discovery.**

Discovery is complete.

**14.   An estimate of the length of trial and suggestions for expediting disposition of the**

**action.**

The Commission estimates that the trial will take approximately three days.

**P. DAVID LOPEZ**
General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

**FAYE A. WILLIAMS**
Regional Attorney
TN Bar No. 011730

/s Markeisha K. Savage__
**MARKEISHA K. SAVAGE**
Trial Attorney
AR Bar No.2011288

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Memphis District Office
1407 Union Avenue, Suite 901
Memphis, Tennessee 38104
(901) 544-0133

*/s/*Pamela B. Dixon
**PAMELA B. DIXON**
Senior Trial Attorney
AR Bar No. 95085

EQUAL EMPLOYMENT
 OPPORTUNITY COMMISSION
Little Rock Area Office
820 Louisiana St., Suite 200
Little Rock, Arkansas  72201
(501) 324-5065
pamela.dixon@eeoc.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

James H. Hanson
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
10 W. Market Street, Ste. 1500
Indianapolis, IN  46204

Sara L. Pettinger
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
30 West Monroe Street, Ste. 600
Chicago, IL  60603

Don A. Smith
Smith, Cohen & Horan, PLC
1206 Garrison Avenue
Fort Smith, AR  72917

December 2, 2014                                    */s/*Pamela B. Dixon___
Date                                                       Pamela B. Dixon